UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

RICKY COLEGROVE,          )
a/k/a RICK A. COLEGROVE,  )
                          )
           Plaintiff,     )   Case No. 1:10-cv-22
                          )
v.                        )   Honorable Joseph G. Scoville
                          )
COMMISSIONER OF           )
SOCIAL SECURITY,          )
                          )   **OPINION**
           Defendant.     )
_____)

    This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On December 22, 2004, plaintiff filed the applications for social security benefits giving rise to this appeal. (A.R. 333-37, 392). He claimed a July 28, 2004 onset of disability.¹ His claims for DIB and SSI benefits

---

  ¹Plaintiff did not actually file his applications until January 12, 2005. December 22, 2004, is the protective filing date. The "protective filing date" is the first time an individual contacts the Social Security Administration about filing for benefits. *See* http://www.ssa.gov/glossary.htm (last visited Mar. 5, 2011). A protective filing date allows a claimant to have an earlier application date than the date the application is actually signed. *Id.*; *see Slaughter v. Astrue*, No. 3:09-cv-233, 2010 WL 3909363, at * 1 n.2 (S.D. Ohio Mar. 31, 2010).
  Administrative *res judicata* stemming from the July 27, 2004 decision denying plaintiff's earlier application for DIB benefits (A.R. 82-87) barred any alleged onset of disability before July 28, 2004.
  Plaintiff's medical records indicate that he was in prison during a portion of the period he claims to have been disabled. (A.R. 416). Plaintiff is not eligible to receive social security benefits for any months he was confined in a jail, prison, or correctional facility. 42 U.S.C. § 402(x)(1)(A).

were denied on initial review. (A.R. 311-15). On May 24, 2007, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 473-502). On August 24, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-21). The Appeals Council denied review on November 12, 2009 (A.R. 7-10), and the ALJ's decision became the Commissioner's final decision. Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 11).

Plaintiff raises two issues:

I. Whether the Commissioner erred as a matter of law in not finding the MRI of August 29, 2007, the MRI of March 12, 2005, and the records of treating physicians of 2005 through 2007 were not new and material evidence relating to the claimant's condition following the previous ALJ's decision of July 27, 2004[; and]

II. Whether the Commissioner erred as a matter of law in finding that the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible due to the claimant not participating in offered physical therapy and recommended second spinal surgery.

(Plf. Brief at 1-2, docket # 10). Plaintiff asks the court to reverse the Commissioner's decision and remand the matter to the Commissioner with instructions to award him benefits. Alternatively, he seeks an order remanding this matter to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). Upon review, the court finds that plaintiff has not carried his statutory burden for an order remanding this matter to the Commissioner for consideration of new evidence. The court further finds that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision. The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he

Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on July 28, 2004, his alleged onset of disability, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 17). Plaintiff had not engaged in substantial gainful activity on or after July 28, 2004. (A.R. 17). The ALJ found that plaintiff had severe impairments consisting of "low back pain and lumbago." (A.R. 17). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work. (A.R. 17). The ALJ determined that plaintiff's subjective complaints were not fully credible:

> The claimant has been treated at Muskegon Family Care on a fairly consistent basis as noted in the previous decision. The record indicates that the claimant, at times, was unwilling to try physical therapy again, and there is a suggestion of drug seeking behavior. The claimant failed a drug test for THC on January 28, 2005, and therefore broke the narcotics contract with his physician. (Exhibit C3F/17)[A.R. 446]. The claimant refuses to attend rehabilitation, the successful completion of which may allow him to be prescribed narcotic pain medication. The physicians have also suggested back exercises and alternative medicine modalities. The claimant's surgeon had suggested surgery to be repeated to remove possible scar tissue (from the first surgery) pressing on the nerve. The claimant was not willing to take that option either. The claimant repeatedly stated that he was taking about three Vicodin ES (extra strength) a day that he procured illegally. The claimant was referred to pain specialists, but had to wait to get in because he was independent in his activities of daily living and functioning while taking Ultram and Flexeril (Exhibits C1F and C3F)[A.R. 413-21, 431-47].

>The claimant did have a lumbar MRI (magnetic resonance imaging) on March 12, 2005, which showed degenerative and postoperative changes. There was narrowing of the right L3 nerve root, and an extradural defect at L4-L5 (Exhibit C3F/19)[A.R. 448]. Once he was admitted to treatment with the pain specialist, the physician noted the claimant was experienc[ing] good pain relief secondary to epidural injections and methadone, at times rating his pain as "two" on a scale of one to ten, with ten being the worst pain. In spite of the report of pain relief, the medical records from the Pain Management Specialists end on November 18, 2005 (Exhibit C3F/21-23)[A.R. 450-52].
>
>The claimant's records indicate he is able to perform several activities of daily living at home, including cleaning, vacuuming, mowing the lawn, washing dishes, and shaving. He did state at times the activities were painful.
>
>The claimant's attorney stated that the previous Administrative Law Judge had noted that objective testing and reporting was scant, resulting in a decision to deny benefits. The undersigned has read and reviewed the medical records relevant to the previous decision, as well as the records submitted in connection with the instant hearing. The undersigned finds that there is no reason to assume that the claimant's impairment[s have] changed such that he would be considered more limit[ed] for purposes of residual functional capacity than he was at the time of the last decision of July 27, 2004.
>
>Thus, the objective medical findings, subjective allegations, medical evidence, and other relevant evidence support[] a finding that the claimant is able to perform the work activities as described in the residual functional capacity.

(A.R. 18-19). Plaintiff was unable to perform his past relevant work. (A.R. 19). He was forty-three years old as of his alleged onset of disability and forty-six years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual at all times relevant to his claims for DIB and SSI benefits. (A.R. 19). Plaintiff has a high school education and is able to communicate in English. (A.R. 20). The transferability of work skills was not material to a disability determination. (A.R. 20). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with his RFC, education, and work experience, the VE testified that there were approximately 17,000 jobs[2] in the State of

---

[2]The ALJ's opinion only listed 8,000 of the 17,000 jobs identified by the VE. The 9,000 job difference is attributable to the ALJ's understatement of the clerical, receptionist, information clerk,

Michigan that the hypothetical person would be capable of performing. (A.R. 499). The ALJ held that this constituted a significant number of jobs. Using Rule 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[3] (A.R. 14-21).

**1.**

Plaintiff argues throughout his brief that the ALJ's decision is not supported by substantial evidence, relying on evidence that plaintiff never presented to the ALJ before his decision. (Plf. Brief at 3-5, docket # 10). This is patently improper.[4] It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the

---

order clerk and inside sales jobs listed by the VE. (A.R. 20, 499). This error worked to plaintiff's advantage. It does not undermine the Commissioner's decision denying plaintiff's claims.

[3]Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether drug abuse was material to a finding of disability.

[4]Plaintiff argues that the Appeals Council was incorrect in its assessment of the evidence that he submitted in support of his application for discretionary review. (Plf. Brief at 3-4). The scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

The last sentence of plaintiff's brief contains a passing request for remand to the Commissioner. (Plf. Brief at 5). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357. Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of

demonstrating that the evidence he now presents is "new" and "material," and that there is "good cause" for his failure to present this evidence in the prior proceeding. *See Ferguson v. Commissioner*, 628 F.3d 269, 279 (6th Cir. 2010); *Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005).

The ALJ issued his decision on August 24, 2007. The August 29, 2007 MRI of plaintiff's lumbar spine (A.R. 469-70) and Nurse Practitioner Margaret Woltz's May 6, 2008 statement (A.R. 472) are "new" because they were generated after the ALJ's decision. *See Ferguson*, 628 F.3d at 276.

Contrary to plaintiff's assumption, "good cause" is not established solely because evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see Ferguson*, 628 F.3d at 276-77. The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276-77. Plaintiff has not addressed, much less carried his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276-78; *Foster v. Halter*, 279 F.3d at 357. The ALJ held that plaintiff was not disabled from July 28, 2004, through August 24, 2007. Plaintiff's proffered evidence does not purport to address his condition during this period. The August 29, 2007 MRI of plaintiff's lumbar spine would not have reasonably persuaded the Commissioner to reach a different decision. The MRI indicated that plaintiff's vertebral bodies generally showed "a normal configuration, no compression deformity or significant signal deformity." (A.R. 469). It revealed "mild" narrowing

of the L4-L5 and L5-S1 discs, and a loss of signal intensity at these levels consistent with degeneration. "Other disc levels [were] well maintained." (A.R. 469). "Little change [was] noted from the previous study of 03/12/2005." (A.R. 469). These findings are completely consistent with the ALJ's decision and would not have led to a different result.

The one-page document signed by Nurse Practitioner Woltz on May 6, 2008 (A.R. 472) is not material. The statement is not supported by objective test results. Further, a nurse practitioner is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *see also Turner v. Astrue*, No. 09-3019, 390 F. App'x 581, 586 (7th Cir. 2010). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)). The opinions of a nurse practitioner fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, .1527, 416.912, .927). This is not a demanding standard. The court is not persuaded that there is a reasonable probability that the Commissioner would have reached a different decision if this proffered evidence had been presented and considered. Because plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is

warranted, plaintiff's request for remand will be denied. His arguments must be addressed on the record presented to the ALJ.

**2.**

The arguments in section I of plaintiff's brief are fragmentary, undeveloped, and unsupported by legal authority. They are more readily quoted than summarized:

I. <u>The Commissioner erred as a matter of law in not finding the MRI of August 29, 2007, the MRI of March 12, 2005, and the records of treating physicians of 2005 through 2007 were not new and material evidence relating to claimant[']s condition following the previous ALJ decision of July 27, 2004.</u>

The Commissioner erred as a matter of law in not finding the MRI of March 12, 2005 and August 29, 2007 and the records of treating physicians were not new and material evidence relating to claimant[']s condition following a previous decision of July 27, 2004. The ALJ's decision of August 24, 2007, cited AR 98-3(6) and AR 98-4(6), whereby adopting the previous ALJ's decision by finding that there was no new and material evidence relating to the claim. (Tr. 15). The ALJ and the Appeals Council both indicated that evidence of record does not document that the claimant's musculoskeletal impairments have required any significant treatment since 2005. (Tr. 8). The ALJ and the Appeals Council have both indicated this as reasoning for following the previously set RFC of the 2004 ALJ decision.

However, what is erroneous here is the progress notes of the physicians establish significant findings showing a worsening of claimant's condition. They include neural anatomic distribution of pain, limitation of motion, positive straight leg raising, bilateral lower extremity radicular pain, and abnormal reflexes of the left [A]chilles [tendon]. (Tr. 430-452). In addition to these clinical findings, there is the MRI of March 12, 2005, and the MRI of August 29, 2007. (Tr. 469-470). As stated above, these MRIs indicate post-operative scar issues at L4-5 and large herniation at L3-4 compromising the neural foramen.

In addition to these clinical and diagnostic findings, the claimant testified as to his worsening condition. (Tr. 489-493). Claimant testified as to his need to recline periodically throughout the day due to low back and leg pain. (Tr. 489). He testifie[d] as to his limitations with sitting and standing and that he is unable to lift more than 10 pounds. (Tr. 490-492). He further testified that he has bad days fairly frequently [during] which he is unable to do any activities. These days would preclude him from entering the work force and he would be unable to maintain employment due to absenteeism.

(Plf. Brief at 3-4). Perfunctory arguments are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008). Assuming the issues had not been waived, they do not provide grounds for disturbing the Commissioner's decision for the reasons set forth below.

    A.    The ALJ's Decision Not to Reopen the Earlier Denial of Benefits
           Is Not Subject to Judicial Review

The ALJ found no basis to reopen the July 28, 2004 decision denying plaintiff's earlier application for DIB benefits because there was no new and material evidence:

> The undersigned finds that there is no new and material evidence affecting the prior proceedings; therefore, the undersigned declines to re-open the prior decision.
>
> The earlier hearing decision is a final and binding decision that the claimant was not disabled on or before July 27, 2004. The earliest possible onset date that can be considered by the undersigned is July 28, 2004, the day after the day of the earlier hearing decision.

(A.R. 15). The ALJ's decision declining to reopen an earlier application for social security benefits is not subject to judicial review. *See Califano v. Sanders*, 430 U.S. 99, 107-08 (1977); *see also Anderson v. Commissioner*, 195 F. App'x 366, 369-70 (6th Cir. 2006).

    B.    RFC

The ALJ found that plaintiff retained the RFC for a limited range of sedentary work. (A.R. 17). The ALJ's finding was consistent with, but not determined by, the August 27, 2004 decision denying plaintiff's earlier claim for DIB benefits. (A.R. 87). *Res judicata* stemming from the 2004 decision prevented the ALJ from making findings that plaintiff was capable of performing work at a *higher* exertional level, *see Drummond v. Secretary of Health & Human Servs.*, 126 F.3d 837, 842-43 (6th Cir. 1997), or that he *was capable* of performing his past relevant work, *see Dennard v. Secretary of Health & Human Servs.*, 907 F.2d 598, 600 (6th Cir. 1990), unless the ALJ

found that there was "new and material evidence" supporting such findings. *See* SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998) (reprinted at 1998 WL 274052) and SSAR 98-3(6), 63 Fed. Reg. 29770-01 (June 1, 1998)(reprinted at 1998 WL 274051). Nothing in the 2004 decision prevented the ALJ from finding that during the period presently at issue (July 28, 2004 through August 24, 2007), plaintiff retained the RFC for a limited range of sedentary work (A.R. 17) or that plaintiff was not capable of performing his past relevant work (A.R. 19).

The ALJ considered all the evidence presented, including plaintiff's testimony. (A.R. 19). The ALJ was not persuaded by plaintiff's attorney's argument that plaintiff should be found disabled on this claim for DIB and SSI benefits because his condition had deteriorated after the July 27, 2004 decision. (A.R. 19). The ALJ found that plaintiff retained the RFC for a limited range of sedentary work. RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative finding of fact made by the ALJ on the record as a whole. *Coldiron v. Commissioner*, 391 F. App'x 435, 439 (6th Cir. 2010). There was little objective evidence supporting plaintiff's claim for DIB and SSI benefits. (A.R. 19). His March 12, 2005 MRI revealed no significant spinal canal stenosis. Plaintiff's vertebral bodies showed normal configuration without compression deformity or signal abnormality. The MRI did indicate a lateral protrusion of the L3-L4 disc to the right, causing a narrowing of the right L3 nerve root. (A.R. 448). Plaintiff reported good pain relief with intermittent epidural injections. (A.R. 450). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. The court finds that the ALJ's administrative finding that plaintiff retained the RFC for a limited range of sedentary work is supported by more than substantial evidence.

**3.**

Plaintiff argues that the ALJ credibility determination is not supported by substantial evidence. Specifically, he argues that the ALJ committed reversible error under SSR 96-7p and the Eastern District's decision in *Stennett v. Commissioner*, 476 F. Supp.2d 665 (E.D. Mich. 2007), because the ALJ did not consider plaintiff's ability to pay for medical treatment before drawing an inference that plaintiff's back and leg pain was not as severe as he claimed. (Plf. Brief at 4-5). Plaintiff's argument is meritless. The ALJ did not draw any adverse inference based on plaintiff's failure to seek medical treatment.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Payne v. Commissioner*, No. 08-4706, 2010 WL 4810212, at * 3 (6th Cir. Nov. 18, 2010). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference

particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d at 1234; *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

A claimant's failure to seek medical treatment over an extended period of time is often a factor to be considered against the claimant's assertion of a disabling condition.[5] *See Strong v. Social Security Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment" and "[a] failure to do so may cast doubt on the claimant's assertions of disabling pain."); *see also Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements*, SSR 96-7p (reprinted at 1996 WL 374186, at * 7) (SSA July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .").

---

[5]The rule is not without exception. "In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness." *Strong*, 88 F. App'x at 846. (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 2004)).

General assertions regarding a plaintiff's inability to pay for additional tests or services that might have supported his claim are insufficient. *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Sixth Circuit recognizes that an inability to pay for medical services may result in less than optimum documentation of a plaintiff's condition, but the reviewing court must work with the medical record presented to it. "It is doubtless true that a more affluent patient might have obtained a more detailed medical record, but it does not necessarily follow that such a record would have compelled a conclusion that the claimant was disabled. We must work with the record we have. . . ." *Id.* .

SSR 96-7p states that before drawing an adverse inference from the claimant's failure to seek or pursue regular medical treatment, an ALJ must first "consider[] any explanations the individual may provide or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at * 7. The ALJ's credibility determination did not rely on the general rule that a claimant's failure to seek treatment over an extended time period undercuts his assertion that his impairments are disabling.[6] (A.R. 19). Plaintiff's reliance on SSR 96-7p and related case law from the Eastern District is misplaced.[7]

       The ALJ finding that plaintiff's daily activities undercut his claims of disabling functional limitations is well supported. (A.R. 19). *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff's credibility was further undermined by the absence of significant atrophy or neurological deficits. (A.R. 19, 84-85, 420, 435, 450). *See Crouch v. Secretary of Health & Human Servs.*, 909

---

[6]If the ALJ had found that plaintiff's failure to seek medical treatment undermined his claims of disabling pain, it would not have constituted error. Plaintiff's medical evidence was generally restricted to 2005: progress notes from Muskegon Family Care *(*A.R. 439-447), the March 12, 2005 MRI (A.R. 448-49), and progress notes from Michigan Pain Consultants dated August 5 and November 18, 2005 (A.R. 450-52). Plaintiff did not file medical records for the relevant portions of 2004 and 2007, and 2006 progress notes were limited to three dates (A.R. 431-37). Although plaintiff testified that he stopped seeing Dr. Gowney because he owed an outstanding bill (A.R. 486, 490-91), plaintiff's testimony did not establish that he was unable to afford treatment, that it was otherwise unavailable, or that he had sought medical treatment and it had been denied. *See Policoro v. Commissioner*, 1:09-cv-71, 2010 WL 3779910, at * 6 (W.D. Mich. Mar. 22, 2010).

[7]The Eastern District's *Stennett* decision is not binding precedent in this court. *See Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 761-62 (W.D. Mich. 2008). Here is it not persuasive authority because the facts the court confronted in *Stennett* are not remotely similar. In *Stennett*, the court found that the ALJ erred because he attributed the claimant's failure to attend physical therapy to medical improvement, but the underlying medical record revealed that the claimant had stopped attending physical therapy "because he had opted the more aggressive [surgical] treatment suggested by his doctor." 476 F. Supp. 2d at 673.

F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008).

Social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). The ALJ's observation that plaintiff had declined to participate in drug rehabilitation, physical therapy, or a possible surgery, apparently in favor of self-medication with Vicodin or other illegally obtained drugs, was appropriate and well supported. (A.R. 19; *see* A.R. 413, 416, 434, 437, 439, 442, 444, 446). Plaintiff's treating physician, William Dukes, M.D., explained to plaintiff that he would not prescribe narcotics or Ultram for plaintiff "due to his current use of THC."[8] (A.R. 445). Dr. Dukes offered a course of physical therapy, but plaintiff "was not interested in that again just yet." (A.R. 445). Because plaintiff had violated Muskegon Family Care's narcotics policy, his treatment options were restricted. "Options for [plaintiff] includ[ed] completing drug rehab, at which point [doctors] would consider restarting narcotics for his pain. Other options include[d] back exercises, PT, or alternative medicine modalities." (A.R. 446). The court finds that the ALJ's credibility determination easily passes review under the deferential substantial evidence standard.

---

[8]Tetrahydrocannabinol (THC) is the primary intoxicant in marijuana and hashish. *See Monson v. DEA*, 589 F.3d 952, 955 (8th Cir. 2009).

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated: March 10, 2011               /s/ Joseph G. Scoville
                                    United States Magistrate Judge